THE ROBERT GARRETT LUMBER COMPANY, *Appellee*, v.
MARY R. LOFTUS, *Appellant.*

No. 16,401.

### SYLLABUS BY THE COURT.

1. MECHANIC'S LIEN—*Married Woman's Real Estate—Material Furnished under Contract with Husband.* The mechanic's lien law (Code 1909, § 649) allowing a lien on a married woman's real estate for material furnished to her husband under a contract with him and used by him to improve such property does not violate the mandate of the constitution (art. 15, § 6) that married women shall be protected in acquiring and possessing property separate and apart from their husbands, or conflict with the married women's act (Gen. Stat. 1909, § 4872) providing that the separate estate of a married woman shall not be subject to the disposal of her husband or liable for his debts.

2. —— *Personal Judgment against Wife Not Authorized.* The mechanic's lien statute does not authorize a personal judgment against a wife for the price of material furnished to her husband under a contract with him and used by him in improving her property.

3. —— *Lien Does Not Extend to Shares of Cotenants Acquired after Lien Attached.* A mechanic's lien created in the manner stated in paragraph 1 upon a married woman's undivided interest in a tract of real estate does not extend to the shares of her cotenants, and after the lien has been perfected she may purchase and hold such shares unencumbered by it.

Appeal from Leavenworth district court; JAMES H. GILLPATRICK, judge. Opinion filed June 11, 1910. Modified.

*James F. Getty, F. D. Hutchings,* and *David F. Carson,* for the appellant.

*J. C. Petherbridge,* and *E. B. Baker,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one to foreclose a mechanic's lien. Mary R. Loftus owned an undivided one-sixth of the lots affected, in fee sim-

ple.   Her  husband  undertook  to  convert  a  building
standing upon the lots into an ice plant, and the lumber
company  sold  him  lumber  for  that  purpose.   A  lien
was  duly  perfected  which  correctly  stated  the  interest
of · the  owner.   After  the  suit  was  commenced  an
amended petition was filed which stated that while the
action  was  pending  Mary  R.  Loftus  acquired  the  re-
maining interests in the property and thereby became
the owner of all the shares.   A personal judgment was
rendered against Mary R. Loftus for the amount of the
lien, the lien was charged upon the whole property, and
a decree of foreclosure was entered.   Mary R. Loftus
appeals.

Section 649 of the code of 1909, which governs the
controversy, reads as follows:

"Any  person  who  shall  under  contract  with  the
owner of any tract or piece of land, or with a trustee,
agent, husband or wife of such owner, perform labor or
furnish material for the erection, alteration or repair
of  any  building,  improvement  or  structure  thereon,
.  .  .  shall have a lien upon the whole of said piece
or tract of land, the building and appurtenances, in the
manner herein provided."

It will be observed that this statute permits a hus-
band to subject his wife's real estate to a lien for im-
provements which  he  erects  thereon  under  his  own
contract, without her authority, consent or knowledge.
An agency in the ordinary sense of that term need not
exist.   The appellant argues that the statute to this
extent contravenes the provisions of the constitution
requiring that married women shall be protected in
acquiring and possessing property separate and apart
from their husbands (art. 15, § 6), and contravenes the
statute enacted in obedience to the constitution provid-
ing that the separate estate of a married woman shall
not be subject to the disposal of her husband or liable
for his debts (Gen. Stat. 1868, ch. 62, § 1; Gen. Stat.
1909, § 4872).

The mechanic's lien statute does not permit a husband to dispose of his wife's real estate, or permit her real-estate to be sold for his debts, in the sense of the married women's act. The lien is allowed and the sale is made because of the increment in value to the wife's property consequent upon the improvement. Having received the benefit, her property is charged with the burden. The same equitable purpose is subserved as that accomplished by the occupying claimant act, and no more injustice is likely to result than follows from the enforcement of any remedial statute. In some cases the wife may be ignorant of her husband's conduct, and in rare instances the structure may be a detriment, but generally real estate will not be openly and visibly improved without the owner's acquiescence; and a wife who does not submit may always intercept a lien by prompt action. Actual authority on the part of the husband to act for the wife is easily denied and hard to prove, and the door would be opened to gross fraud if, after material has been furnished or labor performed to the betterment of the wife's property, she could repudiate it. For the purpose of preventing perjury and fraud the statute estops the wife from denying the acceptance and receipt of benefits from an improvement erected on her land by her husband. Viewed from this standpoint no constitutional objection to the law is apparent.

From an instruction given the jury called in the case and from the court's findings of fact it appears that the trial court entertained the view that the statute quoted authorizes a personal judgment against the wife, as well as a lien, whenever material is purchased by her husband, is used in the improvement of her property, and is not paid for. Such is not the law. The statute gives nothing, either expressly or by implication, except the right to a lien. It creates no agency in the husband to bind the wife personally, and no personal obligation exists to pay her husband's debt for material

he buys and uses on her premises unless by conduct or agreement the wife creates one.    Knowledge of her husband's contract with the material man and knowledge that the material is being used for the improvement of her property are not sufficient.    She may be willing that the improved property shall be bound and be unwilling to subject the remainder of her estate to liability; and unless she adopts the contract as her own or makes herself responsible for the debt as in other cases no personal judgment can be rendered against her.    Otherwise her separate estate would be liable for the payment of her husband's debts.    The appellee cites the case of *Bethell v. Lumber Co.*, 39 Kan. 230, to the contrary, wherein the commissioner writing the opinion said:

"Where the husband of the owner of the property purchases material, which the statute provides he may do, the person furnishing the material under such a contract may presume, and he has the right to do so, that it is furnished to the husband of the wife, to be charged to her and upon her property, and has a right to file a lien to secure its payment."    (Page 234.)

In that case a husband entered into a contract with his wife to furnish labor and material for the improvement of her property.    The contract was performed but some of the material was not paid for, and the lumber company which sold the material perfected a lien therefor.    The husband told the agent of the lumber company to go to his wife for the money when wanted and that she would pay him.    The wife did make payments to the lumber company when called upon, and on such occasions desired receipts in her own name.    The contract between the husband and the wife, however, was not disclosed to the lumber company.    The district court rendered judgment sustaining the lien, and also rendered personal judgment against the wife.    On appeal the judgment was affirmed.    The contest in this court related to the effect of the undisclosed contract

between the husband and the wife upon the right to a lien. The language quoted formed a part of the discussion of that subject, which indeed was the only one considered. The personal judgment against the wife rested upon grounds wholly independent of any supposed statutory liability. The existence of such a liability was not pressed upon the attention of the court, was not necessary to an affirmance of the judgment of the trial court, and was not in fact adjudicated, as the syllabus of the decision clearly shows. The interpolation of the word "her" was purely *obiter*, and the clause in which it occurs should read: "to be charged to and upon her property." This being true, the decision furnishes no authority for the personal judgment against Mrs. Loftus. No independent reason for sustaining the judgment is offered by the appellee, and none is apparent.

Expressions are common in the law books to the effect that a mechanic's lien binds interests in the property subsequently acquired by the person who is the owner within the meaning of the statute. An examination of the authorities shows that, although not so stated in express terms, the principle applies to those cases only in which the after-acquired interest operates to increase or enlarge the estate to which the lien has already attached, as when the holder of a leasehold or of a life estate purchases the fee, or the holder of an equitable estate acquires the legal title, or an encumbrance is removed, or when an estate by curtesy becomes initiate by the birth of a child, or when one without title makes an improvement and then obtains title. But if the acquired interest be distinct and independent, so that it does not merge into the estate already held or inure to the support of such estate, it is not affected by the lien.

Leaving out of account necessary repairs and improvements essential to the preservation of the property, one tenant in common can not by his own contract

alone subject the interests of his cotenants to a mechanic's lien. (*Mellor v. Valentine,* 3 Colo. 260; *Seely v. Neill,* 37 Colo. 198; *Conrad & Ewinger v. Starr,* 50 Iowa, 470, 481; *Woodburn et al. v. Gifford,* 66 Ill. 285; *Leslie and Slack v. Leonard,* 10 Pa. Super. Ct. 548.) Those shares are no more bound than they would be if partition had already taken place, and they may be sold and conveyed as free from lien as if independent tracts held by separate owners were involved. The facts of this case are much stronger. By virtue of the marital relation and the statute the appellant's husband was able to subject his wife's one-sixth interest in the lots to the lien, but no other estate or right or interest existed to which he had the legal power to attach a lien. The one-sixth interest belonging to Mrs. Loftus was a fixed and definite share, entitling her to a specific quantity of the lots on partition. She held this interest by a title which could not be fortified or improved. Her estate was not capable of enlargement or betterment, because she owned the entire estate. There was no additional interest she could acquire and merge into that to which the lien attached. After the lien became fixed it was not capable of expansion to include distinct and independent shares, and those which were free of the lien when it was perfected remained as free in the hands of Mrs. Loftus as they were before she purchased them.

The case of *Lumber Co. v. Fretz,* 51 Kan. 134, cited by the appellee, is entirely consistent with these views. Fretz was in undisputed possession and claimed the right of such possession when the improvement was made. Afterward he received a conveyance of the legal title, but by just what right did not appear. The court held that in the absence of a contrary showing the conveyance was a recognition of a prior equitable title. When the legal and equitable titles merged the lien attached to the whole estate.

36—82 KAN.

The appellant claims the trial court committéd error in some matters which have not been discussed. If so her substantial rights were not prejudicially affected.

The judgment of the district court is modified so far as it relates to the appellant, Mary R. Loftus, to include no more than the foreclosure of the lien upon the one-sixth interest in the property which she originally possessed. As modified the judgment is affirmed, with costs to the appellant.