No. 36,726

Harry M. Kennedy, *Appellant*, v. (Alfred Gibson) H. E.
Atchison, *Appellee*.

(178 P. 2d 987)

Opinion filed April 5, 1947.

*William Keith*, of Wichita, was on the briefs for the appellant.

*I. H. Stearns* and *E. P. Villepique*, both of Wichita, were on the briefs for
the appellee.

The opinion of the court was delivered by

Parker, J.: This is an action to foreclose a mechanic's lien. The
claimant failed to recover in the court below and now seeks appel-
late review of the judgment rendered against him.

H. E. Atchison owned a tract of land in Sedgwick county and on
June 19, 1945, entered into a written contract with Alfred Gibson
whereby he agreed to sell the property to the latter upon a monthly
payment plan and convey it to him by warranty deed when each
and all of such payments had been made in the manner provided
for therein. The agreement expressly provided that second party
(Gibson) acquired no right, title or interest in the real estate until
such time as all sums due and payable under its terms had been paid.
By another provision Gibson was to have immediate possession
but was to assume all rights claimed by a tenant who was then oc-
cupying the premises under a lease and operating some sort of

business in a building located thereon, known as the Village Barn. After execution of the contract Gibson took possession and shortly thereafter the plaintiff performed the labor on this building which now serves as a basis for the lien claimed by him.

The petition alleged plaintiff's work on the building was performed under an oral agreement with Alfred Gibson and H. E. Atchison, the owners of the real estate, stated the amount due for such labor, charged that it had not been paid, and asserted the filing of a statement for a mechanic's lien in the manner provided by law. It prayed for personal judgment against the parties named for the amount alleged to be due and a decree awarding plaintiff a mechanic's lien on the entire tract to secure the payment of such judgment. In due time Atchison filed an answer denying generally all allegations of the petition except the one stating he owned the property. He admitted that allegation but specifically denied he had at any time entered into an agreement with anyone to make improvements on such premises or that plaintiff was entitled to a mechanic's lien thereon. In addition, he set out a copy of his contract with Gibson, denied that such person had ever been the owner of the real estate and alleged that on the 16th day of January, 1946, another division of the court in which the plaintiff's action was then pending had rendered judgment against Gibson canceling such contract for his failure to make the conditional payments required by its terms.

Insofar as they pertain to the parties involved in this appeal the issues thus raised by the pleadings were tried by the district court without a jury. That tribunal, after hearing the evidence, refused to render personal judgment against defendant Atchison, and held plaintiff was not entitled to a mechanic's lien on the real estate described in the petition to secure payment of the personal judgment it had rendered against Gibson, who had made no defense and was in default of answer.

There is no occasion for an extended recital of the evidence on which the trial court's judgment is predicated. Briefly stated, the plaintiff's own testimony regarding his oral contract of employment, alleged to have been made with Gibson and Atchison, was that it was made with Gibson and that he did not even become acquainted with Atchison until after he had commenced work on the job. The record discloses the only interest Gibson ever had in the real estate was what he acquired under the terms of the contract to which we

have heretofore referred and that that interest was wiped out by judgment of a court of competent jurisdiction for failure to comply with the conditional agreements of such contract prior to the rendition of judgment in the instant proceeding. With respect to express authorization for the work, it reveals Atchison at no time ever entered into a contract or other agreement with plaintiff for the performance of labor, and fails to show that he at any time gave anyone authority to take that action for him. As to implied agency the most to be said is, excepting the contract itself to which we shall presently refer, it divulges that after plaintiff had commenced work Atchison, pursuant to his oral agreement with Gibson, was seen upon the premises, sometimes as often as two or three times a week, and that on such occasions he would look around, comment upon the progress of such work, make suggestions regarding it, and even indicate how he would like to have it done. At one time he went so far as to suggest they could use 2 by 6's out of the balcony to make joists for the ceiling. On the other hand, there is evidence — some of it by plaintiff's witnesses — indicating he simply appeared to be looking around "seeing what Gibson was doing to the premises." In addition the record shows Atchison's denial that he had anything to do with, or control over, what was being done, and his testimony to the effect that whatever comments were made by him regarding it were suggestive, not directive, and made at a time when he had gone down to the building to see and talk to Gibson about collecting past-due and unpaid installments on the sale contract. Also his statement that he merely gave consent to Gibson to use the 2 by 6's in the balcony.

Our statute granting a mechanic's lien on real estate to persons performing labor on buildings located thereon is G. S. 1935, 60-1401. It reads:

"Any person who shall under a contract with the owner of any tract or piece of land, or with a trustee, agent, . . . of such owner . . . perform labor or furnish material for the erection, alternation, moving or repair of any building, improvement or structure thereon . . . shall have a lien upon the whole of said piece or tract of land, the building and appurtenances . . . Such lien shall be preferred to all other liens or incumbrances . . . subsequent to : the commencement . . . of the making of such repairs or improvements."

Appellant, doubtless because of the undisputed record evidence, no longer bases his right to a mechanic's lien on his alleged oral contract with Atchison. Neither does he claim that right on the

ground of express agency. His position now is the trial court erred in failing to hold that agency of Gibson to contract for the performance of the repair work done by him on the building, thus subjecting the land to a mechanic's lien, was implied from the undisputed facts and circumstances disclosed by the record.

That authority of an agent to bind his principal may be either express or implied is too well established to require citation of authorities dealing with the subject. In the recent case of *Greep v. Bruns*, 160 Kan. 48, 159 P. 2d 803, we held such authority is implied if from the statements of the parties, their conduct and other relevant circumstances it appears their intent was to create a relationship permitting the assumption of authority by an agent which, when exercised by him, would normally and naturally lead others to believe in and rely on his acts as those of the principal. In the opinion we stated the test to be applied in determining whether implied authority exists is the one set forth in 2 C. J. S. 1045, § 23, where it is said:

"The relation of agency need not depend upon express appointment and acceptance thereof, but may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. If, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency. On the other hand, where it does not appear that there was any express or implied intention to create the relation, it will not be held to exist, as where it appears that the agent was acting on his own behalf.

"An implied agency must be based on facts for which the principal is responsible, they must, in the absence of estoppel, be such as to imply an intention to create the agency, and the implication must arise from a natural and reasonable, and not from a forced, strained, or distorted, construction of them. They must lead to the reasonable conclusion that mutual assent exists, and be such as naturally lead another to believe in and to rely on the agency. The existence of the relation will not be assumed.

"While the relation may be implied from a single transaction, it is more readily inferable from a series of transactions.

"An agency will not be inferred because a third person assumed that it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem natural and probable and to the advantage of the supposed principal, nor from facts which show that the alleged agent was a mere instrumentality."

The first contention advanced by appellant in support of his position is double-barrelled and not altogether consistent with his general statement as to the issue involved. On the one hand, he

argues the sale contract in and of its own terms shows implied authority on the part of Gibson to contract as Atchison's agent for repair of the building and, on the other, insists that by virtue of its terms Gibson was the owner of the property and in that capacity subjected the real estate to a mechanic's lien by contracting for and allowing him to perform work on the building situated thereon.

As supporting his position the contract shows implied agency on its face, appellant relies on *Shearer v. Wilder,* 56 Kan. 252, 43 Pac. 224; *Potter v. Conley,* 83 Kan. 676, 112 Pac. 608; *Brown v. Walker,* 100 Kan. 542, 164 Pac. 1092, and *Meadows v. Oil Co.,* 108 Kan. 228, 194 Pac. 916. We have carefully examined the cited decisions but time and space will not permit their extended analysis in this opinion. It will suffice to say they do not uphold appellant's contention. The contracts there under consideration contained provisions permitting a conclusion the landowner had either contemplated or authorized improvement of the premises involved. Here, the agreement between Atchison and Gibson made no mention whatsoever of repairs or improvements and, as has been heretofore indicated, it expressly provided the purchaser acquired no title to the land until all sums due thereunder had been paid. We know of no decisions which go so far as to hold that such a contract, in and of itself, can ever be construed as conferring implied authority to a purchaser of real estate to create a lien thereon. If we were to so construe the instant contract we would be reading something into it that is not to be found there.

It is true that we do not place a narrow or illiberal interpretation upon the ownership necessary to the creation of a mechanic's lien. Time and again we have held the possessor of an equitable title to be the "owner" of property for all intents and purposes of the mechanics' lien statute. Two of our decisions to that effect are *Lumber Co. v. Osborn,* 40 Kan. 168, 19 Pac. 656, and *Lumber Co. v. Arnold,* 88 Kan. 465, 129 Pac. 178. Many others could be cited but it is not here important that we specifically mention them. Nevertheless, it does not follow that Gibson was the owner of the real estate by virtue of his contract of sale as claimed by appellant.

Long ago, in *Harsh v. Morgan,* 1 Kan. 293, when confronted with a somewhat similar contention this court said:

"The statement of facts shows that the defendant, Connell, had no title to the lot in question, except what he might derive from an agreement, in writing, between himself and said Harsh, never recorded, by which it was stipulated that said Harsh should convey the premises to said Connell on payment

of one thousand dollars. This was the extent of Connell's interest in the land the house was erected upon. The plaintiffs who furnished labor or materials for said house, in pursuance of contracts made with Connell, can claim no greater or higher interest in the land than Connell had. The stream cannot rise higher than its fountain, nor could Connell, by his contract with the plaintiffs, convey to them a higher title to the land than he possessed." (p. 302.)

Later, in *Lumber Co. v. Schweiter*, 45 Kan. 207, 210, 25 Pac. 592, to which we have consistently adhered, we laid down the principle of law applicable to situations where persons seek to foreclose mechanics' liens on real estate for work done or for materials furnished under an agreement with one who has an executory contract for the purchase of such property. The case, as we view it, is decisive of appellant's claim. There we held:

"In an action to foreclose the lien of the lumber company, that the contract under which J. held limited his interest and ownership, and his right to create liens on the lots, and that the lien of the lumber company is subordinate to the mortgage liens given in pursuance of the contract." (Syl.)

And in giving the reasons responsible for our conclusion said:

"To create a valid lien for material or labor, it is necessary that the person for whom they are furnished should be an owner within the meaning of the statute, and have a right at the time the contract for the same is made to create a lien. The only claim which Jones had upon the land was derived from his contract with the owner, and any one who relies on the contract to establish ownership in Jones must be governed by the limitations and conditions therein contained. When the lumber and material were purchased and furnished, Jones did not have the legal title, and by the terms of the contract which he made he did not have the equitable title, and he could create a lien on no greater interest than he held. 'In general, it must be said, that only the interest of the contracting party can be subjected to the lien; and if he has no interest, there is nothing to which the lien can attach.' (2 Jones, Liens, § 1245; *Wagar v. Briscoe*, 38 Mich. 587; *Hayes v. Fessenden*, 106 Mass. 230.) If the lumber company had examined the public records when the material was sold and delivered, it would have ascertained that the legal title was in Schweiter; and if it had pursued the inquiry as it should have done, it would have learned of the contract between Jones and Schweiter, with all of its conditions and limitations. As has been said:

" 'They should have exercised some care and caution as to whether their employers—or the purchasers—had such an interest in the property as they could subject to a lien for the lumber and material furnished. Under the statute, no lien attaches to the building unless the person with whom the contract is made has some interest or estate in the land on which it is situate. The lien is upon the realty with the building attached to the extent of the ownership of the one who contracted for the construction of the building, and no further; and if there is no ownership, there is no lien on either land or building.' (*Huff v. Jolly*, 41 Kan. 537.)

"The lumber company, therefore, can claim only through the contract under which Jones held, and must take subject to the restrictions and limitations therein imposed on Jones. . . ." (p. 210.)

The doctrine just announced, as we have stated, precludes appellant's recovery on a claim based on ownership by virtue of the executory contract where the purchaser failed to obtain title because of failure to comply with his agreement. It is particularly applicable in a case where—as here—it is conceded the purchaser's contract has been cancelled and any rights acquired thereunder have been extinguished by judgment of a court of competent jurisdiction.

No more need be said on the point in question. We desire, however, to briefly refer to the decisions cited by appellant and on which he relies to sustain his position. All deal with executory contracts, held to pass equitable title, and uphold a mechanic's lien created by the purchaser. We shall not attempt to relate the factual situations in such cases. Our purpose is to merely point out that notwithstanding their result each recognize and approve the doctrine which we have applied in reaching the conclusion just announced.

*Getto v. Friend,* 46 Kan. 24, 26 Pac. 473, holds:

"In actions to foreclose mechanics' liens for work done and for material furnished, under a contract with one who has an executory contract for the purchase of a city lot and is in possession thereof, the lien of the mechanic or materialman must be measured by the extent of the equity of the purchaser under the executory contract." (Syl. ¶ 2.)

*Mortgage Trust Co. v. Sutton,* 46 Kan. 166, 170, 26 Pac. 406, states:

"This case is different from *Lumber Co. v. Schweiter,* 45 Kan. 207, because there the purchasers of the material had no legal or equitable estate in the lots upon which the house was erected . . ."

*Lumber Co. v. Arnold,* 88 Kan. 465, 469, 129 Pac. 178, is distinguished by an identical statement.

In *Drug Co. v. Brown,* 46 Kan. 543, 26 Pac. 1019, a person in possession of real estate under a verbal agreement to convey title subsequently acquired the fee pursuant to its terms. We held:

"When a person in possession contracts for material for the erection of a building upon the premises, and a portion of the material has been furnished and the construction of the building begun, and afterward, pursuant to said agreement, the full title is conveyed to him, *held,* that the lien for the material so contracted, if filed in time, is prior to mortgage liens obtained subsequent thereto." (Syl. ¶ 2.)

Appellant's final argument, although strenuously urged, amounts

to nothing more than a claim the undisputed record facts and circumstances required the trial court to find Gibson had implied authority to subject the real estate to a valid mechanic's lien. It has no substantial merit. The judgment holding appellant was not entitled to a lien includes a finding there was no authorization, either express or implied, to create one. Of a certainty, when measured by the rule to which we have heretofore referred it cannot be successfully urged the record compels a finding of implied agency as a matter of law. Conceding testimony on the point was conflicting there can be no question but that it discloses sufficient substantial and competent evidence to sustain the trial court's decision on the factual issue. In that situation the judgment must be upheld (*McHenry v. McHenry*, 150 Kan. 498, 501, 95 P. 2d 261).

The judgment is affirmed.