(659 P.2d 243)

No. 54,410

Construction Materials, Inc. d/b/a Springhill Lumber, *Appellant*, v. Eldon W. Becker and Marcia D. Becker; C. Dennis Reese and Lorene L. Reese; Regional Investment Co., and Federal National Mortgage Association, *Appellees.*

Opinion filed February 24, 1983.

John L. Richeson, of Anderson, Byrd & Richeson, of Ottawa, for appellant.

Michael H. Farley, of Prairie Village, for appellees Reese.

J. Russell Dillon, of McCaffree & Grimshaw, Chartered, of Olathe, for appellees Regional Investment Co. and Federal National Mortgage Association.

Before Parks, P.J., Abbott and Rees, JJ.

Rees, J.: Plaintiff brought this action to foreclose a mechanic's lien. It appeals from an adverse judgment entered on the ground the lien statement was fatally deficient.

Huntington Heights, Inc., was the record owner of a lot in an Olathe subdivision when, on an undisclosed date in December, 1978, it and Eldon Becker, a Johnson County builder, contracted for the sale of the lot to Becker. The transaction was concluded later by the delivery and recording of a warranty deed on December 29, 1978.

On December 27, 1978, two days prior to the delivery and recording of the deed, Becker contracted with plaintiff to purchase lumber and building materials for the construction of a duplex on the lot. Becker planned to and did build the duplex on a speculative basis. Pursuant to its agreement, plaintiff delivered materials to Becker. The first delivery was on December 27, 1978, and construction began. The last delivery was on June 20 or 21, 1979. Which of these two last dates was the particular date of last delivery does not affect the outcome of this case; we will consider it to be June 21, 1979.

On approximately March 1, 1979, C. Dennis Reese contracted

with Becker to purchase the lot and completed duplex. It is uncontradicted Reese had no prior legal or equitable interest in the lot or the duplex then under construction. A warranty deed from Becker to Reese, dated June 11, 1979, was recorded on June 26, 1979. Whether this deed was delivered to Reese on June 11, 1979, or at a closing on June 22, 1979, is an uncertainty of no present importance. Reese took possession of the lot and duplex on or about July 1, 1979. Construction of the duplex apparently was completed by then since the premises were occupied by tenants under rental agreement with Reese, who bought the property as an investment.

Becker failed to pay in full for the materials furnished by plaintiff under their contract. On October 12, 1979, plaintiff filed a lien statement for the amount claimed due but unpaid. When the lien statement was filed, Becker had previously divested himself of all interest in the property. Reese was the record owner. This was known to plaintiff as the result of a title search run October 11, 1979.

The plaintiff's lien statement named Becker as owner and named plaintiff as claimant. The trial judge held the lien statement fatally deficient because "it fails to name the contractor" as required by K.S.A. 1982 Supp. 60-1103. Since the lien statement was filed more than three months but less than four months after plaintiff's last delivery of materials, plaintiff perfected a lien only if there was compliance with K.S.A. 1982 Supp. 60-1101 and K.S.A. 60-1102.

Through the briefs and at oral argument we are told the real question presented here is whether, in cases where there is an ownership change, K.S.A. 1982 Supp. 60-1101, K.S.A. 60-1102 and K.S.A. 1982 Supp. 60-1103 require that the lien statement name as owner the owner who contracted for the materials or the owner when the lien statement is filed.

We find no directly governing Kansas case authority. The appellees, Reese, his wife and their mortgagees, almost singularly rely upon *Toler v. Satterthwaite,* 200 Kan. 103, 434 P.2d 814 (1967). That opinion is an enigma because of the presence of the italicized language appearing in the opinion quotation set forth hereafter. We are satisfied the decision in *Toler* is correct, but the reason for inclusion of the questioned language in the court's summation of its decision escapes us.

*Toler* concerned lien statements filed under what is now K.S.A. 60-1102 and K.S.A. 1982 Supp. 60-1103 and parties who held a right to purchase under an executory contract with a builder who agreed to construct a house on a lot the builder was to buy. The builder was the record owner of the lot when it contracted with the claimants. The purchasers later exercised their right and were record owners when the lien statements were filed. It was held the purchasers' executory contract interest supported a mechanic's lien and they were properly named as owners in the lien statements which set forth the selling builder's name as the name of the contractor. In the opinion it is said:

"During all the time the labor was performed and materials furnished, the appellants had title to an equitable interest or estate in the property which was subject to the liens, and when they received the fee simple title, the liens attached to the full extent of their ownership. *Moreover, the appellants were the record title owners of the property described in the lien statements when they were filed and served which sufficed to perfect the liens, notwithstanding the fact that Bontz was the [sic] owner of the property when the contracts with the appellees to perform labor and furnish materials were entered into.* To hold that the appellees' lien statements must state the name of Bontz as the owner of the property would be to require something of them which the statute does not require; and to hold that a statement of the names of the appellants as owners at the time the lien statements were filed was insufficient, would be to deprive the appellees of liens when they had fully complied with the requirements of the statute.

"In view of the foregoing, we are of the opinion the appellants at all times material herein were the owners, equitable, legal, or both, of the property involved and were properly named the owners of the property in the appellees' lien statements when they were filed, and written notice of the liens was properly served upon them as owners." (Emphasis added.) 200 Kan. at 110-111.

The following are the pertinent portions of our mechanic's lien statutes:

### K.S.A. 1982 Supp. 60-1101.

"Any person furnishing . . . material . . . used or consumed for the improvement of real property, under a contract with the owner . . . shall have a lien upon the property . . . .".

### K.S.A. 60-1102(*a*).

"Any person claiming a lien on real property, under the provisions of K.S.A. 60-1101, shall file . . . within four (4) months after the date material . . . used or consumed was last furnished . . . under the contract a verified statement showing:

"(1) The name of the owner, [and]

"(2) the name of the claimant  . . . ."

K.S.A. 1982 Supp. 60-1103(*a*).

"Any . . . subcontractor or other person furnishing . . . material . . . used or consumed at the site of the property subject to the lien, under an agreement with the contractor, or a subcontractor of the contractor, may obtain a lien . . . in the same manner and to the same extent as the original contractor except that:

"(1) The lien statement must state the name of the contractor and be filed within three months after the date . . . material . . . was last furnished . . . by the claimant . . . ."

On its face, the statutory language is clear enough. Where A, the owner of real property, contracts with B for B to furnish materials for the improvement of the property and B performs under that contract, B may obtain a lien upon the real property for any unpaid amount owed to B by filing a lien statement within four months after B last furnished materials; the lien statement must name A, the owner, and B, the claimant. Where C, under agreement with B, furnishes materials in performance of B's contract with A, C may obtain a lien upon the real property for any unpaid amount owed to C by B by filing a lien statement within three months after C last furnished materials; the lien statement must name A, the owner, B, the contractor, and C, the claimant. In common parlance, B's lien is known as a contractor's lien and C's lien is known as a subcontractor's lien.

Since the linchpin of a mechanic's lien patently is a contract between an owner and another person for the furnishing of materials (see *Deal Lumber Co. v. Vieux*, 179 Kan. 760, 765, 298 P.2d 339 [1956]), in order to have a lien it is required that the party named in the lien statement as owner be an owner within the meaning of the statute *and* that he, the named owner, contracted with another person, the contractor. A person cannot have a lien unless he furnished materials under a contract with the named owner, or under an agreement with someone having a contract with the named owner, or under an agreement with someone having an agreement with someone having a contract with the named owner. *Spalding Lumber Co. v. Slusher*, 121 Kan. 155, 157, 246 Pac. 999 (1926); *Lumber Co. v. Washington*, 80 Kan. 613, 615-616, 103 Pac. 80 (1909); K.S.A. 1982 Supp. 60-1101; K.S.A. 60-1102; K.S.A. 1982 Supp. 60-1103.

A contract for the furnishing of materials may be written, oral or implied. *Deal Lumber Co. v. Vieux*, 179 Kan. at 765.

Where a lien is perfected in the manner statutorily prescribed, it is deemed to have attached as of the date the claimant first furnished materials. K.S.A. 1982 Supp. 60-1101; K.S.A. 1982 Supp. 60-1103(*a*).

A person is an owner within the meaning of the statutes if he holds any equitable or legal interest in the property (*Mortgage Trust Co. v. Sutton*, 46 Kan. 166, 169, 26 Pac. 406 [1891]). The interest need not be in fee simple (*Miller v. Bankers Mortgage Co.*, 130 Kan. 543, 545, 287 Pac. 618 [1930]; *Norris v. Nitsch*, 183 Kan. 86, 95, 325 P.2d 326 [1958]), nor need it be of record (see *McHenry v. McHenry*, 150 Kan. 498, 501, 95 P.2d 261 [1939]). A leasehold interest (*Miller v. Bankers Mortgage Co.*, 130 Kan. at 544-545, *Hathaway v. Davis & Rankin*, 32 Kan. 693, 695-697, 5 Pac. 29 [1884]; *Ehrsam & Sons Mfg. Co. v. Rice*, 153 Kan. 483, 487, 112 P.2d 95 [1941]; *Pond v. Harrison*, 96 Kan. 542, 544, 152 Pac. 665 [1915]), an undivided interest (*Garrett v. Loftus*, 82 Kan. 556, 557, 560-561, 109 Pac. 179 [1910]), or a right to purchase under an executory contract (*Toler v. Satterthwaite*, 200 Kan. at 107-108, 109-110) is sufficient. Possession and exercise of rights of ownership, followed by conveyance, is deemed ownership of an equitable and sufficient interest (*Lumber Co. v. Russell*, 93 Kan. 521, 522-523, 144 Pac. 819 [1914]; *Lumber Co. v. Fretz*, 51 Kan. 134, 137-139, 32 Pac. 908 [1893]). A naked option to purchase is insufficient (*Spalding Lumber Co. v. Slusher*, 121 Kan. at 158).

While ordinarily the right to a lien is limited to the interest of the person for whom and at whose instance the materials were furnished (*Norris v. Nitsch*, 183 Kan. at 95), the lien may be enforced against the interest held by the owner when the lien attached as well as any after-acquired interest that enlarges the former by merger. The lien is not enforceable against additional interests in the property held by the contracting owner when the lien statement is filed and enforcement is sought if the additional interests were acquired separately and are independent of the interest to which the lien first attached. *Garrett v. Loftus*, 82 Kan. at 560-561. It logically and necessarily follows that if the lien first attaches to a defeasible or otherwise limited interest, the lien claimant's security is no greater than that interest and is subject to its conditions and limitations. *Kennedy v. Atchison*, 162 Kan. 694, 698-700, 178 P.2d 987 (1947); *Lumber Co. v.*

*Schweiter,* 45 Kan. 207, 210-212, 25 Pac. 592 (1891); *Harsh v. Morgan and others,* 1 Kan. 293, 300-302 (1863).

It is clear to us that it has been and continues to be the law of Kansas that:

"[T]he owner which the statute requires to be named [in the lien statement] is the person with whom the contract was made as owner. The question . . . was discussed in *Lang v. Adams,* 71 Kan. 309, 80 Pac. 383. It was there said:

" 'As the statute makes the contract with the owner the basis of a lien no one but the owner or some one representing him can create a lien upon his property. . . .' (p. 311.)" *Lumber Co. v. Russell,* 93 Kan. at 524-525.

We recognize *Lang* and *Russell* were contractor's lien cases but we discern no sound basis to find the enunciated rule inapplicable to subcontractor's liens. We do not see that it can be reasonably said the word "owner" in K.S.A. 60-1102 means one thing when a claimant files his lien statement as a contractor under K.S.A. 1982 Supp. 60-1101 but can mean something else when a claimant files his lien statement as a subcontractor under K.S.A. 1982 Supp. 60-1103.

In the case before us, all parties view and treat Becker as *the* owner of the subject lot when he contracted with plaintiff and plaintiff first delivered materials. Becker had no contract to sell the lot and duplex. *Cf. Toler v. Satterthwaite,* 200 Kan. 103. His ownership interest at that time was unimpaired and subject to no other legal or equitable interest. When he contracted with plaintiff and plaintiff first delivered materials, he was the only person other than Huntington Heights, Inc., who, as an owner, could contract for materials for improvement of the property. At all times during and from December, 1978, until at least March 1, 1979, Becker acted on his own behalf and not in the performance of any contractual duty owed another person.

Plaintiff made all of its deliveries of materials, from the first delivery date through the last delivery date, solely under its contract with Becker and not under agreement with another person. Plaintiff could not perfect an enforceable subcontractor's lien by filing a lien statement under K.S.A. 1982 Supp. 60-1103 and K.S.A. 60-1102 because it did not undertake performance of all or part of any contractual duty Becker owed to another person. Becker had no such duty when he contracted with plaintiff.

If, in order to perfect an enforceable lien the plaintiff's lien statement should have named a contractor, as the trial court held,

who would be named? The only suggestion made is that Becker should have been named as contractor and Reese should have been named as owner. Had this been done, the lien statement would fail on two counts. First, Becker had no contract with Reese to improve the property. Second, Reese was not an owner of the property when the plaintiff contracted to furnish materials.

"When the lien claimant contracts with the owner there are but two parties to the transaction and but two persons interested in the lien. There is no 'contractor,' in the ordinary business sense of the term, to be named in the lien statement. There are the owner and the claimant, and nobody else." *Brown v. Walker,* 100 Kan. 542, 545, 164 Pac. 1092 (1917).

"When a lien claimant contracts directly with the owner there are, of course, only those two parties involved in the transaction. Under such circumstances there is no contractor, in the ordinary sense of the term, to be named in the lien statement. (*Brown v. Walker,* 100 Kan. 542, 545, 164 Pac. 1092." *Ledigh & Havens Lumber Co. v. Wyatt,* 153 Kan. 214, 220, 109 P.2d 87 (1941).

We conclude and hold plaintiff's lien statement was not deficient by reason of its failure to "state the name of the contractor." Because that is the sole ground relied upon by the trial judge and the defendants on appeal, this case must be reversed.

In our view, *Toler* neither requires nor supports affirmance of this case. The result in *Toler* is wholly compatible with our view of applicable law and our decision. The decision in that case affirmed the attachment of mechanic's liens to the interests of persons who were record owners of the fee title when the lien statements were filed. However, when the claimants agreed to furnish materials and labor and first did so, the later record owners had an equitable interest in the property since they held a right to purchase under an executory contract. The language in the *Toler* opinion we have identified as questionable was gratuitous surplusage to a correct decision.

We are mindful of a reputed split of authority in the case law of the various states on the subject of lien statement designation of the owner under like or similar circumstances. See 53 Am. Jur. 2d, Mechanics' Liens § 212, pp. 730-31; Annot., Mechanic's Lien—Designation of Owner, 48 A.L.R.3d 153, 207-08, § 9 [e]; 10 Thompson on Real Property § 5240, pp. 486-87 (1957 Replacement); 57 C.J.S., Mechanics' Liens § 162 (b), p. 691. Nonetheless, we are convinced our conclusion is required by the wording of the applicable statutes and the case law of this state.

Reversed and remanded.