No. 35,443

The National Bank of Topeka, as Trustee, etc., *Appellant*, v. Sam L. Saia and Anna Saia, His Wife, et al., *Appellees.*

(121 P. 2d 251)

Opinion filed January 24, 1942.

*Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey, Robert E. Russell* and *Edward Stevens,* all of Topeka, for the appellant.

*Clyde P. Schenck, Warden L. Noe,* both of Topeka, and *Albert M. Cole,* of Holton, for the appellees.

The opinion of the court was delivered by

Wedell, J.: This is an appeal by plaintiff, National Bank of Topeka, a corporation, trustee, from that portion of an order of confirmation made in a real-estate mortgage foreclosure action in which the trial court refused to cut off the period of redemption.

The trial court allowed the regular eighteen-month period of redemption. Appellant claims the mortgaged real estate was partnership property and for the purpose of the sheriff's sale it became personal property and, therefore, no period of redemption existed. Appellees contend: the property from the inception of the mortgage transaction to and including the sheriff's sale was treated by appellant as real estate; that our redemption law makes no exception with

respect to the regular redemption period where a partnership real-estate mortgage is foreclosed and the court did not err in allowing the regular period within which to redeem.

While issues were joined by the pleadings on the question of right of redemption, that particular question was reserved by the trial court when it entered its foreclosure judgment until the presentation of the motion for confirmation of sale. Evidence touching the partnership aspect of the transaction was not adduced until the hearing of appellant's motion to confirm the sale.

The pertinent averments of the amended petition were in substance as follows: On May 11, 1928, Joe Saia and Christina Saia, his wife, and Sam L. Saia and Anna Saia, his wife, being members of a partnership known as Saia Brothers, executed three separate notes due upon three separate dates, and a mortgage on real estate located in Jackson and Pottawatomie counties, to secure the notes; the notes and mortgage were executed and delivered to The Prudential Investment Company, and were by it assigned to plaintiff on October 8, 1928; plaintiff is now the owner and holder thereof; the three notes attached to the petition each bore the description "first mortgage bond secured by real estate"; the mortgage was duly recorded in Jackson and Pottawatomie counties; the mortgage registration tax was paid in both Jackson and Pottawatomie counties (the terms of the mortgage will be noticed later).

The amended petition further stated: Joseph R. Saia, being one and the same person as Joe Saia, died testate, February 23, 1934, a resident of Jackson county, and left surviving him as his heirs at law Christina Saia, widow, Victor Saia, a son, Paulina Saia, a daughter, Josephine Saia, a daughter, and Joseph Saia, a son; the will of Joseph R. Saia was duly admitted to probate in the probate court of Jackson county, and Samuel L. Saia, one of the defendants herein, was appointed executor of said estate; on February 28, 1935, on the petition of Sam L. Saia and Anna Saia, his wife, Christina Saia, widow of Joseph R. Saia, deceased, Sam L. Saia, executor of the estate of Joseph R. Saia, and Sam L. Saia, trustee, an order was on the 21st day of March made by the probate court of Jackson county, authorizing and directing Sam L. Saia, executor of the estate of Joseph R. Saia, deceased, and Sam L. Saia, trustee, to enter into an agreement extending the time of payment of the balance due on the notes for a period of two years from May 1, 1934; pursuant to the order of the probate court such agreement was executed by the peti-

tioners above named which extended payment until May 1, 1936; such extension agreements were duly recorded in the office of the register of deeds of Jackson and Pottawatomie counties and the registration fees were paid upon the extended mortgage; on April 8, 1936, Sam L. Saia, resigned as executor of the estate of Joseph R. Saia, deceased, and on the same date an order was issued by the probate court of Jackson county appointing Christina Saia, as administratrix c. t. a. of the estate of Joseph R. Saia, deceased; default was made in the payment of the notes and extensions thereof; the property described in the mortgage was partnership property, having been purchased with partnership funds; the interest of the defendants in the property was an interest in a partnership and should be considered as personal property and sold on order of sale as such, without an equity of redemption.

The mortgage attached to the amended petition described the land which was mortgaged and referred to the security as real estate. It provided that the mortgagee might pay insurance premiums on buildings if they were not paid by the mortgagors, that the mortgagee could pay the unpaid taxes or assessments charged against the property, and that in the event of foreclosure the mortgagee might have the abstract of title extended at the expense of the mortgagors and that all such sums should become liens upon the real estate and that such liens were secured by the mortgage. The mortgage further provided that in the event of default the rents and profits from the premises were pledged as additional security for the payment of the debt. The mortgage also provided that as additional security for the payment of the debt, the mortgagors assigned the profits, revenues, royalties, rights and benefits accruing or to accrue to them under all oil, gas or mineral leases on said premises.

While the amended petition in part asked that the mortgaged property be decreed to be personal property it also specifically requested that if the judgment be not paid forthwith that:

". . . an order of sale issue out of this court, under the seal thereof, directed to the sheriffs of Jackson and Pottawatomie counties, commanding and directing them to advertise and sell, according to law, the above described *real estate* lying in their respective counties . . ." (Emphasis supplied.)

In the journal entry of judgment the trial court found the amount owing by defendants on the notes and specifically found that such amount constituted a lien on the real estate. The judgment made the amount due a lien on the real estate. The court further ordered

that if the judgment was not paid within five days from the date thereof an order of sale should issue to the sheriffs of Jackson and Pottawatomie counties "commanding and directing them to advertise and sell, according to law, the above-described real estate lying in their respective counties." It then ordered distribution of the proceeds of the sale in the manner regularly followed in real-estate mortgage foreclosure actions.

So far as the record discloses, appellant did not object to the order directing the property to be sold according to law, as real estate. No appeal was taken from any part of the foreclosure judgment or order of sale. Pursuant to the order of sale the sheriffs of the respective counties advertised the sale of the property in accordance with the law pertaining to the sale of real estate on mortgage foreclosure, and appellant purchased the property at the sheriffs' sales. Appellant moved for confirmation on the ground the sales were in all respects made in conformity with law. It also requested that by reason of the partnership character of the property it be considered personalty for the purpose of the sheriffs' sales and that no equity of redemption be allowed and that the sheriffs of the respective counties forthwith be ordered to execute and deliver sheriffs' deeds to the purchaser.

In support of the motion to confirm the sale it introduced in substance the following testimony: In 1928 the Prudential Investment Company was the investment department of the National Bank of Topeka; C. L. Cook was then its treasurer; he negotiated the loan with Sam Saia and made a memorandum of the conversation he had with Sam Saia; Joe Saia operated the store at Delia and Sam operated a store at Emmett; these were retail hardware stores and were operated as a partnership in the name of Saia Brothers; the memorandum described the various lots which were covered by the mortgage; one of the tracts of land in Delia was a combination of store building and residence of Joe Saia; one of the tracts of land in Emmett was a combination of store building and residence of Sam Saia; the members of the partnership were Sam and Joe Saia; the signatures of the wives of Sam and Joe Saia to the notes and mortgage were required because it was known they were living with their husbands in their respective properties in Delia and Emmett, they had an interest in the properties and their signatures were necessary to make the mortgage valid; the properties in which they lived were a part of the property covered by the mortgage; at the time the loan

was originally made a partnership financial statement was submitted by Sam Saia, which disclosed the partnership consisted of Joe and Sam L. Saia, that they were engaged in the retail hardware business; the statement listed the partnership assets and liabilities.

The parties stipulated the records of the probate court of Jackson county, in the matter of the estate of Joseph R. Saia, deceased, might be considered and received as evidence. Letters testamentary appointing Sam L. Saia as executor of the estate of Joseph R. Saia were introduced, as was also the order of the probate court of Jackson county, transferring all partnership assets from Sam L. Saia, executor, to Sam L. Saia, surviving partner of the partnership of Saia Brothers. There was also introduced the order of the probate court authorizing Sam L. Saia, trustee, and others, to execute the extension agreement for an extension of the loan which was pleaded in the amended petition. The final report of Sam L. Saia, as executor of the estate of Joseph R. Saia, and his resignation as executor and the appointment of Christina Saia, widow of Joe Saia, as administratrix of the estate of Joe Saia, were also admitted in evidence.

It was further stipulated and agreed that the record title of all property described in the mortgage was in the name of "Sam L. Saia and Joseph R. Saia," prior to February 21, 1934, and that thereafter the record title was as follows: an undivided one-half interest in all of said property in the name of Sam L. Saia and Anna, his wife, and an undivided one-half interest being in the name of Joseph R. Saia and Christina Saia, his wife.

Is appellant entitled to the real estate it purchased, free from all right of redemption? Manifestly, the subject of redemption requires consideration of our redemption statutes. They will be noted presently. Before we turn to the statutory provision governing that subject, we shall first consider appellant's contention with respect to the doctrine of equitable conversion which it advances as the sole basis for its claim that appellees should not be permitted to redeem. Appellant's theory in substance is, the mortgaged real estate was partnership property and that for the purpose of paying partnership debts it is to be regarded as personalty, and that when so regarded no equity of redemption exists. It contends no part of the partnership property is exempt from execution sale for the payment of partnership debts. (*Guptil v. McFee*, 9 Kan. 30; *Dodd, Brown & Co. v. Hills & Kramer*, 21 Kan. 707; *Jones v. Way*, 78 Kan. 535, 97 Pac. 437; *Waldo v. Ross*, 149 Kan. 168, 86 P. 2d 518; Burdick on Part-

nership, 2d ed., 111, 112.) In support of the general doctrine of equitable conversion of partnership property for the payment of partnership debts appellant relies upon *Sternberg v. Larkin,* 58 Kan. 201, 48 Pac. 861; *Moffett v. Moffett,* 131 Kan. 582, 292 Pac. 947; 1 Rowley on Partnership, 325; 47 C. J. 764; 20 R. C. L. 865. The authorities cited do not require a court of equity to cut off the equity of redemption under circumstances existing in the instant case. At the outset it is well to note this is not a case involving a general execution against partnership property for the payment of partnership debts. This is a judicial sale in a real-estate mortgage foreclosure action. The mortgage was taken on specific real estate to secure a debt. Appellant brought this action for the purpose of having the debt declared a first prior and paramount lien upon the particular real estate it accepted as security for the debt and to have that specific security sold to satisfy the debt. In that purpose it succeeded. It does not contend the debt was not fully liquidated by the method and procedure it employed to liquidate it. What necessity is there, then, for asking a court of equity to invoke the equitable doctrine of conversion? That doctrine is a fiction invented by courts of equity to promote justice and, as a fiction, it is applied only for the purpose of doing justice. The doctrine is not applicable under all circumstances. It does not exist as a matter of right, but exists only when necessity and justice require that it be invoked. In *Schneider v. Schneider,* 135 Kan. 734, 12 P. 2d 834, it was held:

"The theory of equitable conversion by which, for certain purposes, real estate is considered as personal and personal estate as real, and transmissible and descendable as such, is a fiction invented by courts of equity to promote justice in carrying out the purposes of the testator or settlor when such a theory is necessary to accomplish that purpose. It should not be applied when the necessity for it does not exist." (Syl. ¶ 1.)

In the Schneider case we quoted with approval from a well-considered opinion in the case of *Yerkes v. Yerkes,* 200 Pa. St. 419, 50 Atl. 186, as follows:

"The doctrine of equitable conversion is based on the rule that what is to be, or ought to be done, shall be treated as if done already. It is a fiction therefore invented to sustain and carry out the intention of the testator or settlor, never to defeat it. Its application requires constant watchfulness to guard against the tendency to become a formal rule *de jure,* without regard to its real purpose and necessity. It should never be overlooked that there is no real conversion, the property remains all the time in fact realty or personalty as it was, but for the purpose of the will, so far as it may be necessary and

only so far, it is treated in contemplation of law as if it had been converted." (Syl. ¶ 1.) (*Schneider v..Schneider,* p. 737.)

The opinion in the Schneider case contains a reference to numerous decisions of our own and to the statements of text writers, in which the general doctrine of equitable conversion is discussed. We do not deem it necessary to enter an exhaustive discussion of the subject in the instant case. It is sufficient to state we are unable to see any necessity for applying the doctrine in order to do justice in the instant case. Without again narrating the facts pleaded in appellant's amended petition, and the facts with respect to the mortgage foreclosure, it is apparent the mortgage was at all times considered by appellant as a mortgage on real estate. It was foreclosed as such. The property, in accordance with appellant's request, was advertised for sale in accordance with the law pertaining to the sale of real estate on mortgage foreclosure. Appellant was the highest bidder. It purchased the real estate upon the basis the sale was made—"in all respects in conformity with law." Appellant asked the court to confirm the sale. The sale was confirmed. Had the land been advertised and sold as personal property, free from an equity of redemption, it is reasonable to assume it might have brought a higher price. Under all these circumstances we cannot see upon what theory of equity and justice appellant was thereafter entitled to urge the property constituted personalty.

It is also well to remember appellant was the purchaser at the sheriff's sale in both counties. It was a party to the foreclosure action. It bought with notice. There are no equities in its favor. It bought only what the court ordered sold. (*Union Pac. Rld. Co. v. Huse,* 127 Kan. 601, 274 Pac. 240; *Howard v. Howard,* 149 Kan. 223, 227, 86 P. 2d 510; *Ehrsam & Sons Mfg. Co. v. Rice,* 153 Kan. 483, 488, 112 P. 2d 95.) Appellant having bought the only property the sheriffs could sell under the respective orders of sale, which was real estate, it is not in a good position to contend the court erred in not selling it as personalty.

We might well conclude the opinion at this point except for appellant's contention that G. S. 1935, 60-3438, contemplates there need not always be a right of redemption in the event of the foreclosure of a real-estate mortgage. The statute does so contemplate, and the following section, G. S. 1935, 60-3439, designates the instances to which the right of redemption shall not apply. The latter statute first prescribes a general eighteen-month period of redemp-

tion.   It then designates certain circumstances under which the period of redemption may be reduced and other instances in which the right of redemption shall not apply.   It provides the period of redemption may be reduced from eighteen months to six months where the court or judge shall find that the lands and tenements have been abandoned, or are not occupied in good faith.   It provides that the right of redemption shall not apply to oil and gas leases or oil and gas leasehold estates.   It provides another exception, which is that a corporation mortgagor may agree in the mortgage instrument. to a shorter period of redemption than eighteen months, or may wholly waive the period of redemption as against the corporation mortgagor *only.*   The exceptions enumerated do not include a mortgage on partnership real estate.   We assume the legislature, having undertaken the task of determining the exceptions to the right to redeem, did not intend to make an exception in the case of a mortgage on partnership real estate or it would have so indicated.   We cannot arbitrarily add such an exception and thereby deprive appellees of their right to redeem.

In the recent case of *Ehrsam & Sons Mfg. Co. v. Rice,* 153 Kan. 483, 112 P. 2d 95, this court had occasion to consider the question of an equity of redemption in a case involving the foreclosure of a mechanic's lien which, under our law, attaches to a leasehold interest in real estate and upon the buildings and improvements placed thereon by the tenant.   The contention was that the elevator and appurtenances thereto constituted personal property and that no period of redemption existed.   The property, in that case as here, was sold at sheriff's sale upon notice and in the manner required for the sale of real estate.   After careful consideration of the question, it was said:

"It is clear that plaintiff was entitled to a mechanic's lien for the materials furnished by him in the erection of the elevator on the leasehold estate, and that being so, he had the right to foreclose his lien and have the property sold if his account for materials was not sooner paid.   The action proceeded to a judgment of foreclosure.   No appeal was then or thereafter taken either by the defendant Rice as owner of the leasehold or by any other party to the action claiming any right in the leasehold or the improvements on it.   In accordance with the judgment, an order of sale issued, a sale was had upon notice and in the manner required for the sale of real estate, and upon the sheriff's return being made, plaintiff moved for confirmation of the sale.   There were no objections to confirmation; the sole question was whether the judgment debtor, Rice, was entitled to a period of redemption.   The matter is settled by our statutes.   Under G. S. 1935, 60-1408, pertaining to mechanic's

liens, it is provided that where judgments are rendered to enforce a lien, the real estate or other property shall be ordered to be sold as in other cases of sales of real estate, and under G. S. 1935, 60-3439, it is provided the defendant owner of any real property sold under order of sale may redeem within eighteen months of the day of sale, unless the court shall find that the lands and tenements have been abandoned or are not occupied in good faith, when the period of redemption is six months. The gist of appellants' complaint is that the property sold was personal property and not real property. The character of the property did not change when the sale was held, and the statement of the sheriff in his return that he sold "personal property" did not alter its true character. It was real estate at all times, and appellants' contention cannot be sustained." (p. 487.)

We think it would be straining the doctrine of equitable conversion unduly to conclude it should have been applied, under all the circumstances in the instant case heretofore stated, for the sole purpose of depriving appellees of a right which is definitely grounded in equity, namely, the right to redeem.

The judgment is affirmed.